IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00537-PAB

STACY N. BROWN-MUELLER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

      This matter is before the Court on plaintiff Stacy N. Brown-Mueller's Application for an Award of Attorney's Fees under the Equal Access to Justice Act [Docket No. 21]. In her motion, plaintiff, as the prevailing party in this social security appeal, seeks attorney's fees in the amount of $10,826.65 pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

      The EAJA provides for an award of attorney's fees to a prevailing party in a civil action brought against the United States unless the court finds that the position of the United States was substantially justified.  28 U.S.C. § 2412(d)(1)(A).  The burden of establishing that the government's position was substantially justified rests with the government.  *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir. 1988).  "Substantially justified" means "justified to a degree that could satisfy a reasonable person" or, stated otherwise, that the government had a "reasonable basis both in law and fact" for its position.  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Under the EAJA, the Court

is to consider both the government's position in the underlying agency action and its position during any subsequent litigation. *Hadden*, 851 F.2d at 1267; *see* 28 U.S.C. § 2412(d)(2)(D)(stating that "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based"). The EAJA also has a built-in mechanism to disallow fees where "special circumstances make an award unjust" and gives courts discretion to deny awards where equitable considerations dictate an award should not be made. *Scarborough v. Principi*, 541 U.S. 401, 423 (2004).

On March 1, 2013, plaintiff filed a complaint [Docket No. 1] seeking review of the final decision of defendant Carolyn W. Colvin, acting Commissioner of Social Security (the "Commissioner"), denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33. The Court reversed and remanded the Commissioner's decision because the Commissioner did not meet her burden to show that plaintiff has the residual functional capacity ("RFC") to perform work that exists in substantial numbers in the national economy. Docket No. 16 at 8-9. Specifically, the Court noted an inconsistency between the finding of the administrative law judge ("ALJ") that plaintiff was capable of performing the job of surveillance system monitor because the position called for a General Educational Development ("GED") reasoning level of three and the ALJ's finding that plaintiff was limited to "simple, 3- to 4-step instructions" and that she "requires work needing little or no judgment[.]" *Id.* at 6-7. Similarly, the Court found that the ALJ's finding that plaintiff was capable of performing the job of "office helper" was not supported by substantial evidence because the job is classified as light work and

2

the ALJ's RFC determination foreclosed a finding that plaintiff was capable of performing light work. *Id.* at 7-8.

The Commissioner opposes plaintiff's motion on the ground that her position was substantially justified. The Commissioner argues that the ALJ properly reconciled his determination that plaintiff was limited to work involving simple instructions with the demands of the surveillance system monitor position by noting that plaintiff had a high school education, Docket No. 23 at 5, and that the ALJ's finding that plaintiff was limited to sedentary work "was a misstatement that did not affect the outcome of this case." *Id.* at 6.

Regarding the surveillance system monitor position, the Commissioner argues that the GED levels describe a claimant's general educational background, not specific mental or skill requirements. Docket No. 23 at 4. The Commissioner notes that the ALJ observed that plaintiff had at least a high school education and that the ALJ's decision was based on plaintiff's education, her RFC, and other vocational factors. *Id.* at 3-4. The Court's decision cited the Tenth Circuit's decision in *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), which found that an ALJ's determination that plaintiff was limited to "simple and routine work tasks" seemed inconsistent with the demands of the surveillance system monitor position, which requires level three reasoning. The Commissioner attempts to distinguish the ALJ's decision in this case from *Hackett* on the grounds that the ALJ here considered plaintiff's high school education, while in *Hackett* the Tenth Circuit did not address the claimant's education level. Docket No. 23 at 4. While the ALJ mentioned plaintiff's education level in this case, the ALJ gave no

3

indication that plaintiff's education was a factor in her determination that plaintiff could perform work that required a higher level of mental reasoning than described in plaintiff's RFC. *See* R. at 37. Moreover, the regulations acknowledge that "the numerical grade level" that a claimant completed "may not represent [her] actual educational abilities" and provide that educational level is not determinative unless "there is no other evidence to contradict it." 20 C.F.R. § 404.1564(b). The ALJ's mere mention of plaintiff's education level, without more, does not cure her failure to discuss the apparent inconsistency between her finding that plaintiff is limited to "simple, 3- to 4-step instructions" and work requiring "little or no judgment" and "few variables" and her conclusion that plaintiff is capable of performing work that requires level three reasoning. R. at 29-30. The Court finds that the ALJ's decision contained the very same inconsistency that the Tenth Circuit found required remand in *Hackett*, namely, the finding that a plaintiff limited to "simple and routine work tasks" was capable of working as a surveillance-system monitor notwithstanding that job's requirement of level three reasoning and the failure to discuss this apparent inconsistency. *See Hackett*, 395 F.3d at 1176.[1] Given this analogous Tenth Circuit precedent, the Commissioner's position

---

[1]The Commissioner argues that any apparent conflict between a reasoning level of 3 and the ALJ's RFC determination may be explained by the fact that the GED describes "general educational background" rather than specific mental or skill requirements. Docket No. 23 at 4. At least for the purposes of this case, this is a distinction without a difference. GED refers to "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dictionary of Occupational Titles ("DOT") Vol. II, App'x C, § 3. The surveillance system monitor position calls for a reasoning level of 3, DOT # 379.367-010, which means that a claimant can "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Vol. II, App'x C, § 3. The Commissioner's characterization of the GED as describing "general educational background" does nothing to cure the inconsistency evident in the ALJ's holding that plaintiff was limited to work involving

was not substantially justified.

Regarding the office helper position, the Commissioner argues that plaintiff fell between the sedentary and light exertional levels and, therefore, the Commissioner reasonably argued that the ALJ's finding that plaintiff had the RFC to perform sedentary work was a misstatement that "did not affect the outcome of this case."  Docket No. 23 at 6.  The Court disagrees.  The office helper position is characterized as "light work," DOT # 239.567-010, and the vocational expert testified that there were no inconsistencies between her testimony (including concerning the office helper position) and the DOT.  R. at 75.  As noted in the Court's order, light work is defined in the regulations as requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  The ALJ found that plaintiff was limited to carrying 10 pounds only occasionally.  R. at 29.  Thus, even if the Commissioner is correct that the ALJ intended to assign plaintiff an RFC for a reduced range of light – rather than sedentary – work, the ALJ made specific determinations regarding plaintiff's RFC that foreclose the job of office helper. *Richardson v. Astrue*, 858 F. Supp. 2d 1162, 1171 (D. Colo. 2012) ("A finding that Plaintiff can only lift ten pounds occasionally means that Plaintiff can not perform light work.").  The Court, therefore, disagrees with the Commissioner's contention that the ALJ merely misstated plaintiff's exertional abilities in a manner that had no bearing on whether plaintiff was capable of performing work that exists in substantial numbers in the national economy and finds that the Commissioner's position was not substantially

"little or no judgment" and "few variables" but could nonetheless perform work that requires level three reasoning.

5

justified.

Having found that the Commissioner's position in this case was not substantially justified, the Court now must determine the reasonableness of plaintiff's fee request. Plaintiff requests $10,826.65 in attorney fees based on 56.8 hours of work at a rate of $190.61.  Docket No. 21 at 5, n.1.

To determine a reasonable fee request, the Court begins by calculating the "lodestar amount."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Regarding the reasonableness of plaintiff's claimed rate, the EAJA provides: "The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A). "The Court has significant discretion to determine the appropriate hourly rate for an award of fees under the EAJA."  *Moreno-Gutierrez v. Napolitano*, No. 10-cv-00605-WJM-MEH, 2013 WL 3233574, at *7 (D. Colo. June 26, 2013) (citing *Headlee v. Bowen*, 869 F.2d 548, 551 (10th Cir. 1989)).  Courts in this district routinely grant cost of living adjustments to attorney fee petitions under the EAJA.  *See id.* (finding that "an hourly rate of $180 per hour takes into account both Plaintiff's counsels' expertise in the immigration field and the increase in the cost of living"); *see also Hanson Colo. Farms*

6

*P'ship v. Vilsack*, No. 11-cv-00675-RPM, 2012 WL 4336174, at *4 (D. Colo. Sept. 21, 2012) (where defendants did not dispute plaintiff's claimed cost of living adjustment, "it may be assumed that $184.23 is an appropriate hourly rate under the EAJA"); *Cross v. Colvin*, No. 12-cv-03310-REB, 2014 WL 5002094, at *2 n.5 (D. Colo. Oct. 6, 2014) ("Except in unusual circumstances, a COLA should be freely given to plaintiffs applying for attorneys' fees under EAJA") (citing *Greenhill v. United States*, 96 Fed. Cl. 771, 783 (Fed. Cl. 2011)).

Plaintiff claims an hourly rate of $190.61, which is based on a comparison between the Consumer Price Index ("CPI") as of October 2014 with the CPI as of March 1996, the date at which the $125 per hour rate specified in the EAJA became effective. Docket No. 21-2 at 2; Docket No. 22 at 6.[2] The Court finds that plaintiff's method for calculating a reasonable rate is sound, but that plaintiff's use of October 2014 as the relevant figure upon which to calculate the reasonable rate is improper.  Plaintiff claims that October 2014 is "a reasonable mid-point" between the date that plaintiff filed her opening brief, July 16, 2013, and the Court's March 2015 remand order.  Docket No. 22 at 6.  Plaintiff's counsel's billing statement, however, shows that plaintiff only claims fees for 6.8 hours of work performed on or after October 2014, compared with 50 hours of work completed before that date.  *See* Docket No. 21-2 at 1-2.  Moreover, while plaintiff

---

[2]The CPI for all urban consumers during March 1996 was 155.7.  U.S. Dep't of Labor, Bureau of Labor Statistics, *CPI Detailed Report*, at 70 (September 2015), *available at* http://www.bls.gov/cpi/cpid1509.pdf (last visited November 4, 2015). Multiple courts have adopted an approach to calculating cost of living adjustments similar to that employed by plaintiff.  *See Zamora v. Astrue*, 2009 WL 311312, at *6 n.1 (S.D. Tex. Feb. 9, 2009); *Gates v. Barnhart*, 325 F. Supp. 2d 1342, 1347 (M.D. Fla. 2002); *Knudsen v. Barnhart*, 360 F. Supp. 2d 963, 971 (N.D. Iowa 2004).

claims July 16, 2013 as the appropriate starting point from which the "mid-point" of October 2014 was calculated, a significant amount of plaintiff's counsel's claimed work was performed before that date.  *See id.*  Rather than calculate plaintiff's rate based on the CPI for every month in which plaintiff's counsel performed work on this case, the Court finds it appropriate to use the semiannual averages reported by the Bureau of Labor Statistics.  The reasonable rate, therefore, is as follows: $186.53 for the first half of 2013, $187.50 for the second half of 2013, $189.78 for the first half of 2014, $190.34 for the second half of 2014, and $189.67 for the first half of 2015.[3]

The Court now turns to the reasonableness of the hours expended on this case. The Court finds that the number of hours claimed by plaintiff is unreasonable.  In particular, the Court notes that plaintiff's counsel billed 22.5 hours for drafting, researching, and revising plaintiff's opening brief and 16.7 hours for preparing plaintiff's reply brief.  The Court finds this time to be excessive given the scope of the issues in this matter and reduces the time spent on plaintiff's opening brief to 18 hours and 13 hours, respectively.[4]  In addition, the Court notes a number of small billing entries after the completion of briefing in this matter for phone conversations between plaintiff and her counsel "regarding status."  *See* Docket No. 21-2 at 2.  While the Court is mindful of the need for communication between counsel and their clients, the Court notes that such

---

[3]These rates are based on semiannual CPIs of 232.366, 233.548, 236.384, 237.088, and 236.265, respectively.  *See* U.S. Dep't of Labor, Bureau of Labor Statistics, *CPI Detailed Report*, at 71 (September 2015), *available at* http://www.bls.gov/cpi/cpid1509.pdf (last visited November 4, 2015).

[4]The Court applies the $186.53 hourly rate to its reduction of hours spent on the opening brief, and the $187.50 rate to its reduction of hours spent on the reply brief.

communications after the completion of counsel's substantive work had no bearing on the outcome of this case.  Moreover, since EAJA fees are awarded to the plaintiff and not to counsel, *Astrue v. Ratliff*, 560 U.S. 586, 596-97 (2010), awarding EAJA fees for numerous calls to counsel that merely request status updates after the completion of substantive work would allow plaintiffs to "pad" their fee awards.  Thus, the Court awards no fees for the entries dated September 17, 2013, January 9, 2014, June 27, 2014, and October 21, 2014, which total 0.8 hours.  Finally, the Court awards no fees for the entry dated May 24, 2013 for filing a proposed joint case management plan.  Docket No. 21-2 at 2.  The Supreme Court has found non-compensable "purely clerical or secretarial tasks."  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

In total, the Court finds that plaintiff is entitled to $8,921.77 in EAJA fees for 47.6 hours expended: 18.1 during the first half of 2013 at a rate of $186.53; 22.9 hours during the second half of 2013 at a rate of $187.50; and 6.6 during the first half of 2015 at a rate of $189.67.

Accordingly, it is

**ORDERED** that plaintiff Stacy N. Brown-Mueller's Application for an Award of Attorney's Fees Under the Equal Access to Justice Act [Docket No. 21] is **GRANTED** in part.  It is further

**ORDERED** that plaintiff Stacy N. Brown-Mueller is awarded $8,921.77 in attorney fees.  It is further

**ORDERED** that, if it is determined upon effectuation of this Order that plaintiff does not owe a debt that is subject to offset under the Treasury Offset Program, and the

Commissioner agrees to accept the assignment, the fee awarded herein shall be made payable to plaintiff's attorney.  If there is such a debt, any fee remaining after offset will be payable to plaintiff and delivered to plaintiff's attorneys.

DATED March 7, 2016.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge